UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Spectrum International Holdings, Inc.,
 f/k/a S.I. Holdings, Inc.,

       Plaintiff,

v.

Universal Cooperatives, Inc.,
 f/k/a National Cooperatives, Inc.,

       Defendant, Counterclaim
       Plaintiff, Third-Party Plaintiff,
       and Counterclaim Defendant,

v.

Joyce International , Inc., Streater, Inc.,
 and Rapid Rack Holdings, Inc.,

       Third-Party Defendants and
       Counterclaim Plaintiffs.

MEMORANDUM OPINION
AND ORDER
Civil No. 04-99 (MJD/AJB)

_____

      Jonathan E. Singer and Katherine A. Moerke, Fish & Richardson, P.C., P.A., Mark R. Ter Molen, Jaimy L. Hamburg and Jon M. Juenger, Mayer, Brown, Rowe & Maw LLP for and on behalf of Spectrum International Holdings, Inc. f/k/a S.I. Holdings, Inc., Rapid Rack Holdings, Inc. and Streater, Inc.

      Dan J. Gendreau and Joseph G. Sedarski, Rider Bennett, LLP for and on behalf of Universal Cooperatives, Inc. f/k/a National Cooperatives, Inc.

_____

1

Background

Defendant Universal Cooperatives, Inc. ("Universal") owned property located at 408 South First Avenue in Albert Lea, Minnesota ("the Property") from the 1950's until November 1985.  During that time, Universal operated a dairy equipment manufacturing facility.  As part of the manufacturing process, Universal used a degreasing machine to remove grease and oils from the metal parts and components.  The degreasing machine held between 50 and 100 gallons of chlorinated solvents, including trichloroethylene ("TCE") and perchloroethylene ("PCE").  Both TCE and PCE are hazardous substances under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., ("CERCLA"), and the Minnesota Environmental Response and Liability Act, Minn. Stat. §§ 115B.01 et seq., ("MERLA").

It is the position of Plaintiff Spectrum International Holdings, Inc. ("Spectrum") and Third Party Defendants and Counter claim Plaintiffs Joyce International, Inc.[1], Streater, Inc. ("Streater") and Rapid Rack Holdings, Inc., ("Rapid Rack") that Universal's disposal of the TCE and PCE contaminated soils and groundwater at the Property, and that they are entitled to the recovery of response costs incurred as a result of such contamination.

_____

[1] Default judgment has been entered against Joyce International, Inc.

2

Ownership of Property

In November 1985, Universal sold the Property to Streater Division, Joyce International, Inc, which later incorporated into Streater, Inc., a wholly-owned subsidiary of Joyce International, Inc.

On November 6, 1997, Spectrum purchased all shares of Streater stock pursuant to a Stock Purchase Agreement executed on March 31, 1997.  In connection with this purchase, an environmental assessment was conducted that concluded there was no evidence of environmental problems at the Property, but did identify a historic solvent spill, spent chlorinated solvent waste generation and the former presence of underground storage tanks ("UST's).  Gendreau Aff, Ex. C.[2]

After Spectrum's purchase of the Streater stock, Streater continued to conduct operations at the Property, which included the storage, shipment and light assembly of wood shelving products and retail store fixtures and displays.

In April 2000, Streater sold the Property to Darling Subco, Inc. ("Darling"). After this sale, Streater changed its name to Rapid Rack Holdings, Inc., and Darling later changed its name to Streater, Inc., and is the entity that currently owns the Property.

_____

[2]In 1988, an Environmental Survey was performed that did not identify hazardous waste storage, spills or USTs.  Zenk Report, Gendreau Aff., Ex. A.  A Phase I was also conducted in 1995 that identified the potential for soil and underwater impacts. Clayton Report, Gendreau Aff., Ex. B.

In connection with the sale to Darling in April 2000, another environmental assessment was conducted.  Based on the results of that assessment, Streater and Darling entered into an Amendment to the Purchase Agreement.  Gendreau Aff., Ex. F.  This amendment recognized that additional environmental work needed to be completed at the site, and as such investigations could take a great amount of time, the parties agreed to proceed with the sale without receiving certification from an independent environmental consultant or agreed upon plan of remediation.  Id.   The parties also agreed that Streater could proceed with additional investigation and required remediation if necessary.  Id.  In lieu of the certification or agreed remediation plan, the parties agreed to enter into an Environmental Letter of Credit, and an Indemnity Letter of Credit.  Id.

In December 2001, Spectrum enrolled the Property in the Minnesota Pollution Control Agency's ("MPCA") Voluntary Investigation and Cleanup Program ("VIC") and conducted an environmental investigation of the Property. The investigation included a review of the Property's operational and regulatory history, a preliminary soil boring investigation, soil and groundwater sampling and analysis and data evaluation.  Moerke Aff., Ex. 5, p.3.  Spectrum asserts that the investigation is not complete and remediation plans have not been developed yet.

In its Amended Complaint, Spectrum claims that it has incurred costs in

detecting, testing and evaluating contamination that has occurred at the Property

and damages as a result of said contamination.  By this action, Spectrum seeks

recovery of those costs and damages from Universal, as well as a declaration that

Universal is liable for all future costs of responding to the contamination at the

Property pursuant to CERCLA §§ 107(a), 113(f) and 113(g)(2) and MERLA,

Minn. Stat. §§ 115B.04 and 115B.11, subd.2(b).  Amended Complaint, ¶ 1.

Universal has filed a Counterclaim against Spectrum and a Third-Party

Complaint against Streater and Rapid Rack seeking to hold these parties jointly

and severally liable to Universal for the necessary costs Universal has incurred and

will continue to incur regarding investigation and possible future cleanup of the

Property, and liable in contribution for such costs pursuant to CERCLA, §§ 107(a)

and 113(f) and MERLA, Minn. Stat. §§ 115B.04.  Universal also seeks a

declaration that Spectrum, Streater and Rapid Rack are strictly, jointly and

severally liable for all past and future response costs and damages incurred and to

be incurred by Universal regarding the Property under CERCLA § 113(g)(2) and

MERLA, Minn. Stat. § 115B.11, subd. 2(b).

Finally, Rapid Rack and Streater have filed Counterclaims against Universal

pursuant to CERCLA and MERLA, seeking a judgment imposing liability against

Universal for contribution and seeking an order declaring Universal is liable for

response costs and damages incurred by Rapid Rack and Streater in connection

with the Property under CERCLA and MERLA.

Before the Court are cross motions for summary judgment.

Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37  F.3d 1338, 1341  (8th Cir. 1994) (citation omitted).  The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

Analysis

    I.  CERCLA Claims

        A. Spectrum, Rapid Rack and Streater's (collectively "Movants") Claims Against Universal.

Section 107(a) of CERCLA permits a person who has incurred response costs to seek cost recovery of such costs from responsible parties.  Section 113(f) of CERCLA permits a person to seek contribution from responsible parties.  Under

either Section, in order to establish CERCLA liability, "a plaintiff must prove (1) defendant is within one of four classes of covered persons enumerated by 42 U.S.C. § 9607(a)(1)(4) ("responsible party"); (2) a release or threatened release of a hazardous substance from a facility has occurred; (3) the release or threatened release caused plaintiff to incur response costs; and (4) those response costs were consistent with the National Contingency Plan (NCP), 40 CFR §§ 300.1-.1105 (1999)." Johnson v. James Langley Operating Co., Inc. 226 F.3d 957, 961-962 (8th Cir. 2000)(citing, 42 U.S.C. § 9607(a) and Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 934 (8th Cir.1995)).

With respect to the CERCLA claims asserted against Universal, Movants argue they are entitled to summary judgment as all of the elements of such claims have been established.  There is no dispute as to the second element: that the Property is a "facility", and that there has been a release of a hazardous substance from the facility.  Universal does, however, dispute the remaining elements.

As to the first element, Movants argue Universal is a responsible party because it owned and operated the facility at the time of disposal of a hazardous substance.  The statutory definition of responsible party includes the current owner/operator of a facility, and any person who, at the time of disposal of any hazardous substance, owned or operated any facility at which such hazardous substances were disposed of.  42 U.S.C.A. § 9607(a)(1) and (2).  Movants have

provided testimony from former Universal employees who testified that TCE and PCE were used in the degreasing machines that were part of Universal's operations. These employees also testified that waste materials and spent solvent were dumped off the loading dock at the southwest corner of the facility. Moerke Aff., Ex. 3, Walk Deposition, p. 36-37, 39-42, 45-47; Ex. 4, Neil Johnson Deposition, p. 47-48, 50, 120. Universal employees also allegedly disposed of chlorinated solvents into a drain inside the facility that was believed to have exited outside at the southwest corner of the facility. Id., Ex. 3, p. 48-49. Movants argue that the areas with the highest detected levels of chlorinated solvent contamination coincide with the former Universal employees' testimony. Id., Ex. 5, p. 15; Ex. 6, p. 214-415.

Universal denies that it disposed of hazardous materials onto the Property as part of its operation. In support, it has provided the affidavit testimony of one of its former managers, who stated that the spent solvents were disposed of off-site. Gendreau Affidavit in Support of Universal's Motion for Summary Judgment, Ex. A, Schroeder Affidavit. Mr. Schroeder further stated that the interior floor drains led to a sanitary sewer, not to the ground. Id. Based on this testimony, the Court finds there is a fact question as to whether Universal contaminated the Property in its disposal of TCE and PCE.

Movants further assert that the last two elements of its CERCLA claim have been established as Spectrum has incurred response costs that are necessary and consistent with the NCP.  Such costs were incurred due to the investigations, monitoring and assessment of the contamination on the Property. Moerke Aff., Exs. 5, 11 and 24.

Universal asserts that Movants have failed to produce a breakdown or description of the response costs incurred sufficient to determine whether such costs were incurred as a result of a release at the Property.  Rather, a general statement has been made that Spectrum has spent approximately $300,000. Universal further argues that the response costs incurred by Spectrum were not necessary as half of such costs were incurred without oversight from the MPCA, and were incurred in order to meet Spectrum's obligations to the environmental indemnification agreement it undertook with Joyce and Darling.

Response costs include the costs incurred to monitor, assess and evaluate the release or threat of release of hazardous substances. 42 U.S.C. §§ 9601(23). See also, Johnson, 226 F.3d at 962 (recovery costs may include site assessments); City of Witchita v. Trustees of APCO Oil Corp. Liquidating Trust, 306 F. Supp.2d 1040, 1091 (D. Kan. 2003) (necessary costs are those costs that are necessary to contain and clean up hazardous releases);  Rockwell Int'l Corp. v. IU  Int'l Corp., 702 F. Supp. 1384, 1387 (N.D. Ill. 1988) (recovery costs include monitoring and

investigatory costs). Government oversight is not a prerequisite to CERCLA cost recovery. Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1575 (5th Cir. 1988); see also, Rockwell, 702 F. Supp.2d at 1387. Further, a claimant's motive in incurring such costs is irrelevant under CERCLA. Johnson, 226 F.3d at 963.

Spectrum has submitted evidence establishing that it incurred costs with respect to investigating and assessing the contamination that was identified on the Property. Spectrum has thus established that it has incurred recovery costs. The exact extent of such costs need not be determined at this time. See, Nutrasweet Co. v. X-L Eng'g Corp., 933 F. Supp. 1409, 1423 (N.D. Ill.) aff'd, 227 F.3d 776 (7th Cir. 2000) (entering judgment as to liability only, issue of extent of damages reserved for trial).

Universal also challenges whether the response costs are consistent with the NCP on the basis that: 1) Spectrum failed to report the release to the State Duty Officer in a timely manner; 2) failed to involve the MPCA-VIC for the initial and substantial site investigation work; 3) failed to evaluate potential response actions based on investigation results and didn't prepare an evaluation of remedial alternatives; 4) failed to notify Universal of the release in a timely manner; and 5) failed to provide meaningful and required public comment.

The Federal Regulations governing CERCLA provide that a "private party response action will be consistent with the NCP if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in paragraphs 5 and 6 of this section, and results in a CERCLA-quality cleanup". See, 40 C.F.R. § 300.700(c)(3)(I).[3]

The parties do not dispute that no cleanup has yet occurred, and no plan has been approved by the MPCA.  As such, some of the issues raised by Universal, for example, failure to provide meaningful public comment, have not yet come into play.  Nevertheless, Spectrum may be entitled to recovery of investigative and monitoring costs without regard to NCP compliance.  See eg. Donahey v. Bogle, 987 F.2d 1250, 1255 (6th Cir. 1993) cert. granted, vacated and remanded on other grounds, sub nom, Livingstone v. Donahey, 512 U.S. 1201 (1994); Containerport Group, Inc. v. American Fin. Group, Inc., 128 F. Supp.2d 470, 481 (S.D. Ohio 2001)(citing with approval Donahey). There is also no requirement that Spectrum notify Universal of the contamination within a specified period of time.  The Court thus finds that Universal has failed to raise a genuine issue of material fact that the response costs incurred to date are inconsistent with the NCP.

---

[3]Paragraph 5 references further provisions that must be complied with, such as documentation and cost recovery, Section 300.160 and permit requirements, Section 300.400(e). Paragraph 6 provides for public comment concerning the selection of the response action, including references to further provisions regarding public comments.

In opposition to Movants' motion for summary judgment, and in its cross motion for summary judgment, Universal asserts that judgment should be entered in its favor as to Spectrum's  § 107(a) claim because Spectrum is a potential responsible party ("PRP"), and is thus barred from bringing a Section 107(a) claim.

The Court will first address the issue of whether a PRP is barred from bringing a § 107(a) claim.  The current jurisprudence in the Eighth Circuit is that a PRP may not bring a § 107(a) claim.  Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 531 (8th Cir. 2003) (potentially responsible party is limited to action for contribution).  Spectrum argues that this issue needs to be addressed anew in light of the Supreme Court's decision in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 125 S.Ct. 577 (2004), in which the Court specifically declined to address whether a PRP can seek recovery of costs under § 107(a).  Id., 125 S.Ct. at 584-585.  However, Dico has not been overruled, and remains controlling authority in the Eighth Circuit.  Accordingly, the Court finds that a party who is determined to be a PRP is barred from asserting a § 107(a) claim, and such claim will be dismissed.

Universal asserts that Spectrum falls within the definition of a PRP because it operated the facility at a time of the continuing disposal and release of hazardous substances at such facility.  In support, Universal first argues that the

release of hazardous substances have occurred and continue to occur, as

evidenced by both parties' expert testimony that the groundwater impacts have

not been defined.  Universal further argues that Spectrum operated the facility

because Spectrum is the entity that controlled the investigation of the release of

hazardous substances, it assumed the environmental liabilities with respect to the

current owner of the Property, and because it is the current operator of the facility

with respect to environmental matters.

To be an "operator" as defined by CERCLA, Universal must show that

Spectrum is one who "must manage, direct, or conduct operations specifically

related to pollution, that is, operations having to do with the leakage or disposal

of hazardous waste or decisions about compliance with environmental

regulations." United States v. Best Foods, 524 U.S. 51, 66-67 (1998).  For

example, in United States v. Qwest Corp., 353 F. Supp.2d 1048 (D. Minn. 2005),

this Court found that Qwest was not an operator under CERCLA because it did not

conduct any activities relating to the handling and management of hazardous

substances on the site, and that through CERCLA, Congress was targeting those

industries and consumers who profit from products and services associated with

the hazardous substances.  See also, United States v. Gurley, 43 F.3d 1188 (8th Cir.

1994); Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930 (8th Cir. 1995).

In this case, the Court finds that Universal has put forth no evidence that

Spectrum has or had any control over or directed, managed or conducted any operations at the Property relating to the disposal of hazardous substances.  By contrast, Spectrum has produced the affidavit of Tracy Rudd, member of Spectrum's Board of Directors, who states that Spectrum did not have such control nor exerted any direction or management of Streater's operations.

Further, as Spectrum is not the current owner/operator of the facility, to be deemed a PRP pursuant to § 107(a)(2), Universal must demonstrate that there was a disposal of hazardous substances during the time of Spectrum's alleged operations, not a release.   "Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such sold waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."  42 U.S.C. § 9601(29)(incorporating by reference 42 U.S.C. § 6903(3)).   The record does not contain any evidence that chlorinated solvents - TCE or PCE - were disposed of at the Property at any time after Universal sold the Property in 1985.

Further, alleged passive migration of contaminants is not disposal. <u>Carson Harbor Village, Ltd v. Unocal Corp.</u>, 270 F.3d 863, 887 (9th Cir. 2001).  <u>See</u> <u>also</u>, <u>Niagara Mohawk Power Corp. v. Jones Chemical Inc.</u>, 315 F.3d 171, 178 (2nd Cir. 2003)(disposal is set in motion by human agency, but there is none in the passive

flow of contaminated run-off).

Universal responds that hazardous substances are leaching from the facilities and continue to migrate to the groundwater flow, and that there is case law to support its argument that disposal can include migration of hazardous wastes through the environment.  In support, Universal cites to Nurad, Inc. V. William E. Hooper & Sons Co., 966 F.2d 837, 841 (4th Cir. 1992).  This case, however, is distinguishable because its holding is limited to "a party who owns a facility at the time hazardous waste leaks from an underground storage tank on the premises."  Id., 966 F.2d at 840.  In this case, there are no allegations involving a leaking underground storage tank.  Rather, the evidence points to contaminants that were actively dumped, not placed in storage containers that may leak in the future.

Universal further argues that Spectrum is a PRP because it assumed the environmental liability of the current owner.  This argument is also without merit.  CERCLA does provide that those liable may allocate CERCLA liability among themselves.  See, CERCLA § 107(e)(1); 42 U.S.C. § 9607(e)(1)[4].  Such an agreement, however, does not alter the underlying statutory liability.  In City

---

[4] Section 107(e)(1) provides: "No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section."

<u>Management Corp. v. U.S. Chem. Corp.</u>, the court rejected a similar argument, finding that § 107(e) "only applies to prevent one who is already a responsible party from avoiding liability altogether, it does not make one a responsible party." 43 F.3d 244, 255 (6th Cir. 1994).

Universal also argues that Rapid Rack and Streater are PRPs, because they were also owners/operators of the facility at the time of the release or threatened release of a hazardous substance.  As discussed previously, a PRP is defined as either the current owner/operator of the facility, or the owner/operator of the facility during the time of disposal of hazardous substances.

Rapid Rack is not the current owner of the facility.  Universal argues that Rapid Rack's practices resulted in the disposal of hazardous substances, pointing to evidence that during a 1993 audit, the MPCA issued a violation for failure to properly manage hazardous waste in Plants 1 and 2's paint areas.  Gendreau Aff., Ex. J.  The violations documented in this audit, however, mainly involved mislabeling and improper storage of hazardous substances, rather than an improper disposal.  <u>Id.</u>  Furthermore, there is no indication that the hazardous substances at issue were chlorinated solvents.  <u>Id.</u>  The same is true for the 1995 and 1999 audits.  Gendreau Aff., Exs. L and M.  As the contamination at issue in this case involves the removal and remediation of contamination caused by the disposal of chlorinated solvents, Universal has failed to raise a genuine issue of

material fact that Rapid Rack was the owner/operator of a facility at the time of the disposal of said chlorinated solvents.  This finding is supported by Universal's expert, who testified that he did not draw any conclusions that chlorinated solvents were disposed of at the facility after 1985.  Moerke Aff., Ex. 6, at 239-240.

Universal further argues Rapid Rack is a responsible party due to the fact that default judgment was entered against Joyce International on November 10, 2004.  Universal argues that as Rapid Rack's operations were in substantial continuity with those of Joyce, the entry of default against Joyce should be held against Rapid Rack as well.

In support, Universal has cited to Angelo Iafrate Const., LLC v. Potoshnick Const., 370 F.3d 715, 722 (8th Cir. 2004).  Potoshnick does not support this proposition, however.  In fact, the court in Potoshnick declined to hold a default judgment as to one defendant against the co-defendant.  Id. at 722.

While Streater is the current owner of the Property, and falls within the technical definition of a PRP, Movants argue that Streater is entitled to the innocent landowner defense, because it did not pollute the land in any way.  See, NutraSweet Co. V. X-L Eng Co., 227 F.3d 776, 784 (7th Cir. 2000).

CERCLA does provide for certain defenses to PRP's.  Section 107(b) provides:

> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that

the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by–

(1) an act of God;
(2) an act of war;
(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or
(4) any combination of the foregoing paragraphs.

Movants do not argue, however, that Streater qualifies for any of the statutory defenses.  Rather, they rely on a judicially created "innocent landowner" exception, that provides a PRP is exempt from liability if the PRP "did not pollute the site in any way."  Nutrasweet, 227 F.3d at 784.  By contrast, to be entitled to the statutory "innocent landowner exception", Streater would have to show that when it purchased the property it "did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in or at the facility."  42 U.S.C. § 9601(35)(A)(i).  See, Hidden Lakes Development, LP v. Allina Health System, 2004 WL 2203406, * 3 (D. Minn. 2004); See also, United States v. Domenic Lombardi Realty, 204 F.Supp.2d 318, 332-333 (D.R.I. 2002).

The judicially created innocent landowner defense has not been adopted by the Eighth Circuit.  See Dico, 340 F.3d at 532.  In Dico, the court noted that the judicially created innocent landowner defense is contrary to § 107(a) which imposes liability upon PRP's "[n]otwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b) of this section. . . " Id. The court also noted with approval decisions of other circuits that found the innocent landowner defense would circumvent the underlying purpose of CERCLA, by expanding the list of statutory defenses.  Id.  This dicta suggests that the Eighth Circuit is unlikely to adopt the innocent landowner defense, thus the Court will not apply it in this case.

Streater is also not entitled to the innocent landowner exception under Section 107(b)(3) as Streater was aware of the contamination at the time of purchase.  See, Moerke Aff., Ex. 5, 5-6; Ex. 11. Accordingly, as a PRP, Streater is limited to a contribution action under § 113(f).[5]

With regard to Movants' contribution claim under § 113(f), Universal argues it is entitled to summary judgment because a prerequisite to contribution claims is that the claimant must either be subject to a § 106 administrative enforcement order or a governmental clean-up action under § 107(a).

---

[5]Movants assert that in the event the Court finds that Streater is a PRP, Streater should not be allocated any liability for response costs relating to the Property.  Allocation issues, however, will be determined at a later time.

Section 113(f)(1) provides:

Any person may seek contribution from any other person who is liable or potentially liable under [section 107(a)] of this title, during or following any civil action under [section 106] of this title or under [section 107] of this title.  Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed Federal law.  In resolving contribution claims the Court may allocate response costs among liable parties using such equitable factors as the Court determines are appropriate.  Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [section 106] of this title or [section 107] of this title.

The Supreme Court has recently held that a private party may not assert a contribution claim when said party has not been sued under § 106 or § 107. Aviall, 125 S. Ct. at 578-579.

In this case, when Spectrum filed its complaint, it had not been subject to an administrative order pursuant to § 106 or sued pursuant to § 107.  Thus, under Aviall, it could not seek contribution under § 113(f) at the time it filed its complaint.  However, Universal has since filed a § 107 claim against Spectrum. The contribution claim is thus ripe at this time.  As for the 113(f) claims asserted in Rapid Rack and Streater's counterclaim, Universal had already asserted a § 107 claim against them.  Such claims are therefore not barred.

B.  Universal's CERCLA claims against Spectrum, Rapid Rack and Streater.

The Movants assert they are entitled to summary judgment as to Universal's CERCLA claims because Universal is a PRP and is thus barred from asserting a § 107(a) claim.  As discussed above, however, there is a genuine issue of material

20

fact as to whether Universal is a PRP.

Movants argue Universal's CERCLA claims fail for the additional reason that they are not PRP's.  As discussed above, Universal failed to raise a genuine issue of material fact that Spectrum and Rapid Rack are PRP's.  Thus, summary judgment in favor of Spectrum and Rapid Rack is appropriate on this basis.  The same is not true for Streater, however, given the Court's determination that Streater falls within the definition of a PRP under CERCLA.

Movants further assert that summary judgment is appropriate as to Universal's CERCLA claims as Universal has not incurred response costs that are necessary and consistent with the NCP.  In response, Universal asserts that it has incurred costs related to identifying other PRP's, consultant fees and related costs and expenses, and that such costs are necessary and consistent with the NCP.

In Key Tronic v. United States, 511 U.S. 809, 820 (1994), the Supreme Court held that attorneys fees expended in order to determine other PRP's may be recoverable under CERCLA.  In this case, however, Universal has failed to show that it uncovered a PRP.  All subsequent owners of the Property were identified in Spectrum's complaint.  Universal asserts it has also expended costs associated with the assessment of the release, and a review of groundwater and soil data. Such costs would may be recoverable.  Accordingly, the Court finds a genuine issue of fact exists as to whether Universal has expended response costs necessary and

consistent with the NCP.

II.  MERLA Claims

A. Spectrum, Rapid Rack and Streater's Claims against Universal.

To establish liability under MERLA, a claimant must show that 1) Universal was a person responsible; 2) for the release or threatened release of a hazardous substance from a facility into the environment; 3) which caused or significantly contributed to; 4) reasonable response and necessary response costs.  Musicland Group, Inc. v. Ceridian Corp., 508 N.W.2d 524, 531 (Minn. Ct. App. 1993). MERLA defines a responsible person as one who: 1) owned or operated the facility: i) when the hazardous substance or pollutant was placed or came to be located in or on the facility; ii) when the hazardous substance, pollutant or contaminant was located in or on the facility but before the release; or iii) during the time of the release or threatened release.  Minn. Stat. § 115B.03, subd.(1)(I)-(iii).  MERLA is intended to be broader than CERCLA.  Musicland, 508 N.W.2d at 529.

There is no dispute that the Property is a facility, and that there has been a release at the facility.  As discussed above, however, there are genuine issues of material fact as to whether Universal disposed of the TCE or PCE during its ownership.

Universal argues it is nonetheless entitled to summary judgment as to

Spectrum's MERLA claims under  § 115B.04 because this section provides a specific defense, to wit:

> It is a defense to a claim by a . . .  private person for recovery of the costs of its response action under this section that the hazardous substance released from the facility was placed or came to be located in or on the facility before April 1, 1982, and that the response actions . . .  of the private person were not authorized by the [MPCA] as provided in section 115B.17, subdivision 12.  These defense applies only to response costs incurred on or after July 1, 1983.

Minn. Stat.  § 115B.04, subd. 6.

It is Universal's position that Spectrum did not receive the MPCA's authorization prior to conducting any response actions.

Spectrum has, however, provided evidence that the MPCA did authorize its response actions.  Spectrum received a letter from the Manager of the Superfund and Emergency Response Section, Remediation Division of the MPCA which stated:

> In response to the request of Jaimy L. Hamburg of Mayer, Brown, Rowe & Maw, in its letter to the Minnesota Pollution Control Agency (MPCA) dated September 21, 2005, the MPCA hereby authorizes the performance of response actions proposed by Spectrum International Holdings, Inc. in response to chlorinated solvent contamination located in the soil and groundwater on the [Property] . . . This authorization is made by the MPCA pursuant to Minn. Stat. § 115B.17, subd. 12.
>
> The authorization of response actions is solely for the purposes of permitting Spectrum International Holdings, Inc. to seek to recover costs as provided in Minn. Stat. § 115B.04.

Moerke Aff., Ex. 23.

The letter request of Jaimy Hamburg, referenced in the MPCA letter, requested authorization for removal actions taken, and for those that may be incurred in the future.  Gendreau Aff., Ex. R.   Accordingly, the Court finds that the MPCA has provided the necessary authorizations for Spectrum's MERLA claims to proceed.

Universal also argues it is entitled to summary judgment as to Rapid Rack and Streater's counterclaims under MERLA because they have not conducted any response actions, and because they have not received MPCA authority.  The nature of these counterclaims, however, is to allow Rapid Rack and Streater to seek contribution from Universal in the event they are found liable under MERLA.  See, Doc. No. 54, ¶ 35; Doc. No. 55, ¶ 36.  Thus, it is not necessary for Rapid Rack and Streater to have expended response costs to assert a contribution claim.  See Minn. Stat.  § 115B.08, subd. 2.

B.  Universal's MERLA Claims against Spectrum, Rapid Rack and Streater.

Movants argue they are entitled to summary judgment on Universal's MERLA counterclaims and Third Party Claims because the Movants are not responsible parties.  Movants argue the first category of responsible party involves owners/operators of the Property at the time the hazardous substance came to be located in or on the Property, or during the time of release or threatened release.  Minn. Stat.  § 115B.03, subd. 1.  As discussed above, Universal has put forth no

evidence to suggest that chlorinated solvents were disposed of at the Property subsequent to Universal's sale of the Property in 1985.  As owners of the Property subsequent to 1985, they do not fall within this definition of responsible party under MERLA.

However, MERLA's definition of "responsible party" differs from the CERCLA definition in a significant respect.  The MERLA definition references ownership at the time of release, while the CERCLA definition references ownership at the time of disposal.   MERLA defines "release" as any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment which occurred at a point in time or which continues to occur.  Minn. Stat.  § 115B.02, subd.15.  Arguably, migration of a contaminant in the groundwater falls within the definition of release.

Universal argues that the Movants are responsible parties because they owned/operated the Property during the time of release, as a release continues to occur.  In support, Universal notes that the parties' experts both testified that the ground water impact at the Property has not been defined.  The Court thus finds that there is a genuine issue of material fact as to whether there is a continued release as that term is used in the definition of responsible party under MERLA.

Even if the Court were to consider the Movants responsible parties under

MERLA, Movants argue that are entitled to summary judgment as to Universal's

MERLA claims because Universal has not established that the continued release

has contributed to its incurrence of reasonable and necessary removal costs.  The

costs allegedly incurred by Universal consist of attorneys fees, consultant fees and

related costs and expenses.

Under MERLA, a responsible party is liable, jointly and severally, for

response costs and damages resulting from the release or threatened release or to

which the release or threatened release significantly contributes.  Minn. Stat.  §

115B.04, Subd. 1.  Response costs include the costs associated with the clean up

or removal of a hazardous substance, action necessary to monitor, test, analyze

and evaluate a release or threatened release, disposal or processing of removed

material or other actions necessary to prevent, minimize or mitigate damages to

the public health or welfare or the environment.  Minn. Stat.  § 115B.02, subd. 17.

Movants argue that under MERLA, attorneys fees are not recoverable

response costs.  Instead, MERLA provides for attorneys fees only to a prevailing

party. Minn. Stat.  § 115B.14.  The Court agrees that attorneys fees are not

recoverable as response costs.

Movants further argue that consultant fees expended by Universal are not

necessary or reasonable, as Universal's consultant was limited to reviewing the

investigative activities conducted by Spectrum.  As such, the costs are duplicative

of those expended by Spectrum, and are thus not recoverable.

Universal asserts its costs were reasonable and necessary, and include costs for assessing the release of the chlorinated solvents and the review or soil and groundwater. At this time, the record is not clear whether such costs are duplicative. Accordingly, the Court finds issues of fact exists as to whether Universal has expended recoverable response costs.

IT IS HEREBY ORDERED that:

1. Spectrum, Rapid Rack and Streater's Motion for Summary Judgment [Docket No. 73] is GRANTED in part and DENIED in part as set forth in this Memorandum Opinion.

2. Universal's Motion for Summary Judgment [Docket No. 67] is DENIED.

Date: July 17, 2006


s / Michael J. Davis
Michael J. Davis
United States District Court